**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **STACY "ED" PENNING, LILIANA ROSALES,** and **CARE JO VAUGHAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br>v.<br><br>**TRANSCORE, LP,**<br><br>*Defendant.* | **Case No: ______________**<br><br>**COMPLAINT — CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Stacy "Ed" Penning, Liliana Rosales, and Care Jo Vaughan, individually and on behalf of a class of similarly situated persons, bring this Class Action Complaint and allege the following against Defendant TransCore, LP ("TransCore" or "Defendant"), based upon personal knowledge with respect to Plaintiffs, and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against TransCore for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII"), vehicle movement and location data, toll account data, and payment card information (collectively, "Private Information").

2. As used herein, "Private Information" includes: names and contact information; toll account identifiers; license plate and transponder/tag identifiers; vehicle movement and toll-location history, including dates, times, routes, and toll facilities used; payment method and card data; account balances and replenishment details; and other account data maintained in connection with electronic tolling systems.

3. TransCore failed to comply with industry standards to protect information systems that contain Private Information. Plaintiffs seek, among other things, orders requiring TransCore to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the unauthorized disclosure (the "Data Breach") in the future.

4. TransCore is a global leader in transportation technology, providing all-electronic tolling, congestion pricing, tolling back-office systems, access control, and intelligent transportation systems.[1] TransCore's tolling solutions are trusted to accurately collect and reliably process more than $7 billion in annual toll revenues worldwide. Eight of the ten largest toll agencies in the United States use TransCore toll collection systems.[2]

5. On information and belief, on or about June 28, 2026, TransCore's systems were compromised in a data breach that exposed the Private Information of toll-road users across the United States (the "Data Breach"). Reports indicate a "Devastating Ransomware Attack" and identify a June 2026 data breach entry listing the target as "transcore.com" and the attacking group as "Qilin."[3]

6. Unlike a typical data breach involving static personal identifiers, the Private Information exposed here includes granular records of physical movements and travel patterns—the functional equivalent of continuous GPS surveillance or license-plate tracking. Toll-road users consented to a state tolling system processing their toll usage for the limited purpose of collecting tolls; they did not consent to their detailed movement history being accessible to criminal actors because of TransCore's inadequate data security.

---

[1]TransCore, "About Us," available at https://www.transcore.com/about-us (last accessed July 1, 2026).
[2]TransCore, "Tolling," available at https://www.transcore.com/tolling (last accessed July 1, 2026).
[3] DeXpose, "Qilin Strikes Transcore in Devastating Ransomware Attack" (June 30, 2026), https://www.dexpose.io/qilin-strikes-transcore-in-devastating-ransomware-attack/.

7. Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose Private Information was exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to TransCore's data security policies and practices.

## PARTIES

8. Plaintiff Stacy "Ed" Penning is a resident of El Cerrito, California. Mr. Penning has been a FasTrak customer for approximately twenty-five years.

9. Plaintiff Liliana Rosales is a resident of Moreno Valley, California. Ms. Rosales has been a FasTrak customer for approximately twenty years.

10. Plaintiff Care Jo Vaughan is a resident of Thousand Oaks, California. Ms. Vaughan has held FasTrak and The Toll Roads accounts for approximately four years.

11. Defendant TransCore, LP is a limited partnership headquartered in Nashville, Tennessee. TransCore is a wholly-owned subsidiary of Singapore Technologies Engineering Ltd. ("ST Engineering"). ST Engineering completed the acquisition of TransCore Partners, LLC and TLP Holdings, LLC in March 2022.[4]

12. TransCore, including its affiliated and related entities, is authorized to and regularly conducts business throughout the United States, including in Tennessee and California.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy

[4] ST Engineering, "ST Engineering Completes Acquisition of TransCore," (March 18, 2022), https://www.stengg.com/en/newsroom/news-releases/st-engineering-completes-acquisition-of-transcore/; TransCore, "About Us," available at https://www.transcore.com/about-us (last accessed July 1, 2026).

exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because putative Class Members reside outside the State of Tennessee. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

14. This Court has general personal jurisdiction over TransCore because it is headquartered in and maintains its principal place of business in this District. TransCore is authorized to and regularly conducts business in Tennessee.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### TransCore's Business and Data Practices

16. TransCore is headquartered in Nashville, Tennessee and provides all-electronic tolling, congestion pricing, tolling back-office systems, access control, and intelligent transportation systems to tolling agencies and transportation authorities throughout the United States and worldwide.[5]

17. TransCore provides the Integrity Back Office System for the LA Metro ExpressLanes program pursuant to a twelve-year, $88 million contract. Under this contract, TransCore processes toll transactions, manages customer accounts, handles payment processing, and is responsible for network security.[6]

[5]TransCore, available at https://www.transcore.com (last accessed July 1, 2026).
[6]TransCore, "LA Metro ExpressLanes," available at https://www.transcore.com/tolling/back-office/la-metro (last accessed July 1, 2026).

18. TransCore has provided Back Office software solutions for more than twenty-five years, processing more than one billion transactions per year and managing approximately 3.7 million active accounts. TransCore's tolling solutions process approximately $2 billion in toll revenues annually, handling more than 600 million transactions each year.[7]

19. In December 2025, TransCore launched the I-80 Solano Express Lanes, the fourth Bay Area Infrastructure Financing Authority corridor, utilizing automatic vehicle identification and automatic license plate recognition technology to identify FasTrak and FasTrak Flex transponders and license plates for toll collection.[8]

20. TransCore's Infinity Digital Lane System and VIVID (Video Image Vehicle Identification and Detection) technology track license plate read events, correlate vehicle records over time, perform trip building, and associate transponder identifiers with vehicle records.[9] These systems maintain persistent records linking individual vehicles to specific times, locations, and travel patterns across the toll network.

21. By virtue of the services it provides to tolling agencies, TransCore acquires and stores vast quantities of Private Information belonging to millions of toll-road users. TransCore has a duty to ensure that no unauthorized person or entity gains access to, or otherwise causes the disclosure of, this Private Information.

---

[7]TransCore, "Back Office," available at https://www.transcore.com/tolling/back-office (last accessed July 1, 2026).
[8]TransCore, "I-80 Solano Express Lanes Go-Live" (December 2025), available at https://www.transcore.com (last accessed July 1, 2026).
[9]TransCore, "Infinity Digital Lane System," available at https://www.transcore.com/tolling/lane-systems (last accessed July 1, 2026).

## The Data Breach

22. On information and belief, in or around June 2026, TransCore's computer systems and/or data stores were compromised by unauthorized actors, resulting in the exfiltration and/or exposure of Private Information belonging to Plaintiffs and Class Members.

23. On information and belief, on or about June 28, 2026, TransCore's systems were compromised in a data breach that exposed the Private Information of toll-road users across the United States. Reports indicate a "Devastating Ransomware Attack" and identify a June 2026 data breach entry listing the target as "transcore.com" and the attacking group as "Qilin."[10]

24. On information and belief, TransCore has not issued any public statement regarding the Data Breach, nor has it provided individual notice to affected customers or toll-road users whose Private Information was compromised.

25. TransCore's failure to disclose the Data Breach is inimical to the interests of Plaintiffs and Class Members. TransCore should disclose why it was storing Private Information without adequate security safeguards, what specific deficiencies in its data security allowed the breach to occur, whether the affected data was encrypted, and the full extent to which Private Information has been disseminated to unauthorized parties.

26. Numerous questions remain regarding the scope and impact of the Data Breach. Plaintiffs seek through this action to determine the full nature and extent of the breach, to obtain relief for affected individuals, and to ensure that TransCore implements proper security measures going forward.

[10] DeXpose, "Qilin Strikes Transcore in Devastating Ransomware Attack" (June 30, 2026), https://www.dexpose.io/qilin-strikes-transcore-in-devastating-ransomware-attack/.

**TransCore's Security Representations**

27. TransCore's privacy page states that it processes personal data for the purposes of maintaining, monitoring, and securing its systems, account verification, and investigating suspicious activity.[11] TransCore represents that it implements security measures to protect personal data against unauthorized access, alteration, disclosure, or destruction.

28. TransCore states that it has "dedicated controls and procedures for data breach situations" and "notification procedures" for responding to security incidents.[12] Despite these representations, TransCore failed to provide timely notification to Plaintiffs, Class Members, or the public regarding the Data Breach, and failed to implement adequate security measures to prevent the breach from occurring in the first place.

**The Tolling Sector Collects Uniquely Sensitive Data**

29. FasTrak is California's statewide electronic toll collection system, used on every tolled facility in the state, including bridges, express lanes, and toll roads.[13] FasTrak accounts are maintained by regional agencies and processed by back-office service providers including TransCore.

30. Upon information and belief, FasTrak accounts contain: the account holder's name, mailing address, phone number, email address, vehicle information (make, model, year, color), license plate number, transponder/tag identifiers, payment card information (card number, expiration date, billing address), and transaction history. If a transponder is not read, a photograph of the vehicle's license plate is captured and stored.

---

[11] TransCore, "Privacy Policy," available at https://www.transcore.com/privacy (last accessed July 1, 2026).
[12] *Id.*
[13] Bay Area FasTrak, available at https://www.bayareafastrak.org (last accessed July 1, 2026); *see also* California Department of Transportation, FasTrak, available at https://dot.ca.gov/programs/traffic-operations/fastrak.

31. For instance, Plaintiff Penning's February–March 2026 FasTrak account statement reveals the account holder's home location, a specific date and time of travel, the specific facility and lane used, and the payment method.

32. In the aggregate, toll transaction records reveal: home and work locations; visits to medical providers; places of worship; attendance at political rallies or events; meetings with particular individuals; family routines including school drop-off and pick-up times; and travel patterns over extended periods.

**TransCore Stores Plaintiffs' and Class Members' Private Information**

33. TransCore obtained and stored a massive amount of Private Information belonging to Plaintiffs and Class Members. TransCore maintained custody of data pertaining to millions of drivers, including names, toll account identifiers, license plate numbers, transponder/tag identifiers, vehicle movement and toll-location history, payment card data, and account balances.

34. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, TransCore assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access, disclosure, and exploitation.

35. Plaintiffs and Class Members took reasonable steps to maintain the confidentiality of their Private Information and reasonably relied on TransCore to keep their Private Information confidential, properly secured, and adequately protected.

**Private Information Is Valuable and Subject to Unauthorized Disclosure**

36. TransCore was on notice that companies maintaining location data and payment card information are prime targets for cyberattack. In fact, public breach-monitoring reports

indicate a "Transcore Data Breach in 2025" and identify an April 2025 data-breach entry listing victim "transcore.com" and threat actor "Chaos."[14]

37. TransCore was aware, or should have been aware, that the Private Information it collected and maintained is highly sensitive and valuable to those who would use it for wrongful purposes, including identity theft, financial fraud, and surveillance.

38. The Federal Trade Commission ("FTC") has recognized that identity theft is a growing national concern, causing billions of dollars in losses each year.[15] The FTC has found that victims of identity theft spend an average of 200 hours and substantial sums of money attempting to resolve the consequences of the misuse of their personal information.

39. Payment card data commands significant prices on underground markets. Credit card numbers with associated cardholder information and CVVs can sell for $20 to $45 per record, and complete identity packages known as "fullz" command even higher prices.

40. Vehicle-movement data presents unique risks beyond traditional identity theft. Criminals in possession of toll-transaction records can determine when individuals are away from home, identify visits to sensitive locations (medical facilities, attorneys' offices, domestic violence shelters), facilitate stalking and harassment, enable targeted extortion, and plan crimes based on known travel patterns and schedules.

41. The ramifications of TransCore's failure to keep Plaintiffs' and Class Members' Private Information secure are long-lasting and severe. Once compromised, Private Information can be used fraudulently for years. Stolen identity data can be combined with other information over time to build increasingly complete profiles of victims.

[14]BreachSense, "Transcore," available at https://www.breachsense.com/breaches/transcore-data-breach/ (last accessed July 1, 2026).
[15]Federal Trade Commission, What To Know About Identity Theft, available at https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed July 1, 2026).

42. Criminals trade and sell stolen information on the dark web for years after the initial theft. The fact that a particular piece of compromised data has not yet been misused does not mean it will not be in the future. Private Information exposed in the Data Breach may surface in criminal marketplaces months or years from now.

**The Data Breach Exposed Plaintiffs and Class Members to a Present and Continuing Risk of Harm**

43. As a result of the Data Breach, Plaintiffs and Class Members face years of constant surveillance of their financial and personal records, and must forever be on alert for the misuse of their Private Information and the associated risk that their physical movements and travel patterns are known to criminal actors.

44. Despite the publicly available knowledge that cybercriminals routinely target companies that maintain personal and financial information, and despite the particularly sensitive nature of vehicle-movement data, TransCore's data security practices were reckless and/or negligent in that they failed to comply with industry standards for the protection of Private Information.

45. The time Plaintiffs and Class Members have spent and will spend monitoring their financial accounts, reviewing toll-account statements, and guarding against misuse of their Private Information is compensable.

46. Once Private Information is stolen, the damage to those whose data has been compromised continues for years. Victims are never fully secure because their compromised information remains available to criminals indefinitely.

47. As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have been injured and have suffered, and will continue to suffer, a wide variety of harms, including but not limited to:

a. invasion of privacy and disclosure of vehicle-movement patterns and travel history;

b. theft or unauthorized use of their Private Information;

c. lost or diminished value of their Private Information;

d. lost time and opportunity costs associated with attempting to mitigate the consequences of the Data Breach;

e. loss of the benefit of the bargain they struck when they provided Private Information in exchange for tolling services;

f. statutory damages as allowed by law;

g. nominal damages;

h. increased and continuing risk of stalking, harassment, burglary, coercion, and physical harm arising from the exposure of their movement data; and

i. continued and certainly impending risk of additional fraud, identity theft, and misuse of their Private Information.

**TransCore Violated FTC Guidelines**

48. Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce." The FTC has found that a company's failure to maintain reasonable and appropriate data security for consumers' personal information constitutes an unfair practice in violation of Section 5. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

49. The FTC has issued numerous guides for businesses regarding data security that TransCore should have followed.[16]

[16] Federal Trade Commission, Start With Security: A Guide for Business, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed July 1, 2026).

50. In 2016, the FTC published "Protecting Personal Information: A Guide for Business," recommending that businesses protect the personal information they keep, properly dispose of personal information that is no longer needed, plan ahead for security incidents, encrypt sensitive information, understand their network's vulnerabilities, and implement appropriate safeguards.[17]

51. The FTC further recommends that businesses: limit the retention of personal data to that which is needed for legitimate business purposes; limit access to sensitive data on a need-to-know basis; require complex and unique passwords; use industry-tested and accepted methods for securing data; monitor for unauthorized access to or use of personal information; and verify that third-party service providers implement adequate safeguards.[18]

52. The FTC has brought enforcement actions against businesses that fail to implement reasonable and appropriate security measures, establishing a standard of care for the handling of personal information.

53. TransCore failed to implement data security practices recommended by the FTC. TransCore's failure to implement reasonable and appropriate security measures to protect Private Information constitutes an unfair act or practice in violation of Section 5 of the FTC Act.

54. TransCore was fully aware of its obligation to protect Private Information from unauthorized disclosure. TransCore was aware that the FTC and various state laws impose data security obligations on businesses that collect and maintain personal information. Despite this awareness, TransCore failed to adequately protect the Private Information entrusted to it.

---

[17]Federal Trade Commission, Protecting Personal Information: A Guide for Business, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 1, 2026).
[18]FTC, Start With Security, supra.


Case 3:26-cv-00920 Document 1 Filed 07/02/26 Page 12 of 30 PageID #: 12

**Plaintiff Penning's Experience**

55. Plaintiff Penning has been a FasTrak customer for approximately twenty-five years.

56. He most recently used his FasTrak account in November or December 2025.

57. TransCore obtained and maintained Plaintiff Penning's Private Information in connection with its provision of tolling back-office services, including the processing of toll transactions, account management, and payment processing.

58. At the time of the Data Breach, TransCore retained the following Private Information belonging to Plaintiff Penning: his name and mailing address; toll account identifier; license plate and vehicle information; transponder/tag identifier; payment card information; toll transaction history including dates, times, toll facilities, and lane identifiers; and account balances and replenishment details.

59. Plaintiff Penning faces a substantially increased risk of identity theft, fraud, and invasion of privacy as a direct and proximate result of the Data Breach. The exposure of his vehicle-movement data creates a continuing risk of surveillance, stalking, and physical harm.

60. Plaintiff Penning values his privacy and the confidentiality of his Private Information. He would not have provided his Private Information to the tolling system had he known that TransCore would fail to adequately protect it.

61. TransCore has a continuing duty to Plaintiff Penning to protect his Private Information from unauthorized access and to provide timely notice of any data breach affecting his information.

62. Plaintiff Penning faces imminent and impending injury as a result of the Data Breach. The unauthorized access to his Private Information—including his vehicle-movement

history, payment card data, and account information—places him at substantial risk of identity theft, financial fraud, and physical harm.

63. Plaintiff Penning faces a present and continuing risk of harm from the exposure of his Private Information. The compromised data remains in the possession of unauthorized actors and may be traded, sold, or exploited at any time.

64. Plaintiff Penning has a continuing interest in ensuring that the Private Information TransCore continues to maintain regarding him is adequately protected from future security breaches.

**Plaintiff Rosales's Experience**

65. Plaintiff Rosales has been a FasTrak customer for approximately twenty years.

66. She most recently used her FasTrak account in 2025, approximately one year ago.

67. TransCore obtained and maintained Plaintiff Rosales's Private Information in connection with its provision of tolling back-office services, including the processing of toll transactions, account management, and payment processing.

68. At the time of the Data Breach, TransCore retained Private Information belonging to Plaintiff Rosales, including her name and contact information, toll account identifiers, vehicle and license plate information, transponder/tag identifiers, payment card information, toll transaction history, and account balances.

69. Plaintiff Rosales recently reported an influx of spam phone calls. Plaintiff is investigating whether the phone number associated with Ms. Rosales's toll accounts is the same phone number that has received the spam calls.

70. Plaintiff Rosales values her privacy and the confidentiality of her Private Information. She would not have provided her Private Information to the tolling system had she known that TransCore would fail to adequately protect it.

71. TransCore has a continuing duty to Plaintiff Rosales to protect her Private Information from unauthorized access and to provide timely notice of any data breach affecting her information.

72. Plaintiff Rosales faces imminent and impending injury as a result of the Data Breach. The unauthorized access to her Private Information places her at substantial risk of identity theft, financial fraud, and physical harm.

73. Plaintiff Rosales faces a present and continuing risk of harm from the exposure of her Private Information. The compromised data remains in the possession of unauthorized actors and may be traded, sold, or exploited at any time.

74. Plaintiff Rosales has a continuing interest in ensuring that the Private Information TransCore continues to maintain regarding her is adequately protected from future security breaches.

**Plaintiff Vaughan's Experience**

75. Plaintiff Vaughan has held FasTrak and The Toll Roads accounts for approximately four years and is a current customer.

76. TransCore obtained and maintained Plaintiff Vaughan's Private Information in connection with its provision of tolling back-office services, including the processing of toll transactions, account management, and payment processing.

77. At the time of the Data Breach, TransCore retained Private Information belonging to Plaintiff Vaughan, including her name and contact information, toll account identifiers, vehicle

and license plate information, transponder/tag identifiers, payment card information, toll transaction history, and account balances.

78. Plaintiff Vaughan recently reported that her Amazon account was hacked. Plaintiff is investigating whether the credit card associated with Ms. Vaughan's toll accounts is the same card that was compromised in connection with the Amazon account incident.

79. Plaintiff Vaughan values her privacy and the confidentiality of her Private Information. She would not have provided her Private Information to the tolling system had she known that TransCore would fail to adequately protect it.

80. TransCore has a continuing duty to Plaintiff Vaughan to protect her Private Information from unauthorized access and to provide timely notice of any data breach affecting her information.

81. Plaintiff Vaughan faces imminent and impending injury as a result of the Data Breach. The unauthorized access to her Private Information places her at substantial risk of identity theft, financial fraud, and physical harm.

82. Plaintiff Vaughan faces a present and continuing risk of harm from the exposure of her Private Information. The compromised data remains in the possession of unauthorized actors and may be traded, sold, or exploited at any time.

83. Plaintiff Vaughan has a continuing interest in ensuring that the Private Information TransCore continues to maintain regarding her is adequately protected from future security breaches.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs bring this action on behalf of themselves and a class of similarly situated persons, and seek certification under Rules 23(b)(2), 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure. The proposed Class is defined as follows:

> **All persons in the United States and its territories whose Private Information was compromised in the TransCore Data Breach.**

85. Excluded from the Class are: TransCore and any entity in which TransCore has a controlling interest; TransCore's officers, directors, legal representatives, successors, subsidiaries, and assigns; any entity that controlled, controls, or is under common control with TransCore; and the judicial officer(s) to whom this action is assigned, their families, and staff members.

86. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

87. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. TransCore manages approximately 3.7 million active accounts. On information and belief, at least hundreds of thousands of individuals' Private Information was compromised in the Data Breach. The precise number of Class Members can be ascertained through discovery.

88. **Commonality**: There are questions of law and fact common to the Class that predominate over questions affecting only individual members. Common questions include, but are not limited to:

a. whether TransCore owed a duty of care to Plaintiffs and Class Members to protect their Private Information;

b. whether TransCore failed to implement adequate security measures;

c. whether TransCore knew or should have known of the vulnerability that led to the Data Breach;

d. whether TransCore's conduct violated applicable laws and regulations;

e. whether TransCore's conduct constituted an unfair or deceptive trade practice;

f. whether TransCore's failure to provide timely notice of the Data Breach caused harm;

g. whether Plaintiffs and Class Members suffered damages as a result of the Data Breach;

h. the appropriate measure of damages;

i. whether Plaintiffs and Class Members are entitled to injunctive relief; and

j. whether TransCore should be required to implement enhanced security measures.

89. **Typicality**: Plaintiffs' claims are typical of those of the Class. Plaintiffs and all Class Members were injured through TransCore's uniform failure to protect their Private Information. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class Members. Plaintiffs and Class Members suffered the same type of injury arising from the same wrongful conduct.

90. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class Members. Plaintiffs have retained counsel who are competent and experienced in prosecuting class actions, including data breach litigation.

91. **Policies Generally Applicable to the Class**: TransCore has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

92. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable for Class Members to individually redress the wrongs done to them. Individual litigation presents the potential for inconsistent or contradictory judgments. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

93. The litigation of this matter as a class action is manageable. Notice can be provided to Class Members in a manner consistent with due process and the Federal Rules of Civil Procedure.

94. Notice may be provided through a variety of means, including direct email, first-class mail, publication, and/or a dedicated website.

95. Unless a class is certified, TransCore will retain the benefits of its wrongful conduct, even though the wrongful conduct caused injury to Plaintiffs and Class Members.

96. TransCore has acted on grounds generally applicable to the Class, making injunctive and declaratory relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

97. Common questions of law and fact predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3).

## FIRST CLAIM FOR RELIEF

**Negligence**

*(On Behalf of Plaintiffs and the Class)*

98. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs as if fully stated herein.

99. TransCore owed a duty of care to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from being compromised, lost, stolen, misused, or disclosed to unauthorized parties.

100. TransCore knew or should have known of the risks inherent in collecting and storing Private Information, and of the importance of adequate security of that information, including the risk that criminals would attempt to access Private Information maintained by TransCore.

101. TransCore knew or should have known that its data security systems and practices were vulnerable to cyberattack, unauthorized access, and other security incidents.

102. TransCore makes representations regarding data security on its website and in its dealings with tolling agencies, thereby assuming a heightened duty of care to protect Private Information.

103. TransCore breached its duties of care by failing to implement adequate data security measures, failing to detect the unauthorized access in a timely manner, and failing to provide timely notice of the Data Breach to Plaintiffs and Class Members.

104. Plaintiffs and Class Members had no ability to protect their Private Information that was in TransCore's possession. Only TransCore had the ability to prevent the Data Breach.

105. It was foreseeable that TransCore's failure to exercise reasonable care would result in injury to Plaintiffs and Class Members. The harm that occurred was the type of harm that TransCore's duties were designed to prevent.

106. But for TransCore's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, the Data Breach would not have occurred and Plaintiffs and Class Members would not have been injured.

107. As a direct and proximate result of TransCore's negligence, Plaintiffs and Class Members have suffered and will continue to suffer damages, including but not limited to:

a. invasion of privacy and disclosure of vehicle-movement patterns and travel history;

b. theft or unauthorized use of their Private Information;

c. lost or diminished value of their Private Information;

d. lost time and opportunity costs associated with attempting to mitigate the consequences of the Data Breach;

e. loss of the benefit of the bargain;

f. out-of-pocket costs for credit monitoring and identity protection services;

g. increased risk of future harm from identity theft and fraud;

h. increased risk of stalking, harassment, burglary, coercion, and physical harm arising from the exposure of movement data; and

i. the continued and certainly impending risk of additional fraud, identity theft, and misuse.

**SECOND CLAIM FOR RELIEF**
**<u>Negligence Per Se</u>**
*(On Behalf of Plaintiffs and the Class)*

108. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs as if fully stated herein.

109. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits unfair and deceptive acts or practices in or affecting commerce, including failing to implement reasonable data security measures to protect consumers' personal information.

110. TransCore owed a duty of care to Plaintiffs and Class Members, as established by Section 5 of the FTC Act, to implement and maintain reasonable security measures to protect Private Information from unauthorized access, disclosure, and misuse.

111. TransCore violated Section 5 of the FTC Act by failing to implement reasonable data security measures to protect Private Information. TransCore's failure to provide reasonable security constitutes an unfair act or practice.

112. Plaintiffs and Class Members are consumers within the class of persons that Section 5 of the FTC Act was intended to protect.

113. TransCore's failure to implement reasonable security measures was unreasonable given the nature and sensitivity of the Private Information it collected and maintained, including vehicle-movement data, payment card information, and toll account data.

114. TransCore's violation of Section 5 of the FTC Act constitutes a breach of its duty of care to Plaintiffs and Class Members.

115. The harm suffered by Plaintiffs and Class Members is the type of harm that Section 5 of the FTC Act was intended to guard against—i.e., the harm resulting from unfair data security practices that leave consumers vulnerable to data breaches and identity theft.

116. But for TransCore's violation of Section 5 of the FTC Act, the Data Breach would not have occurred and Plaintiffs and Class Members would not have been injured.

117. The Data Breach and resulting injuries to Plaintiffs and Class Members were the foreseeable result of TransCore's failure to comply with Section 5 of the FTC Act. TransCore's violation of Section 5 constitutes negligence per se.

118. As a direct and proximate result of TransCore's negligence per se, Plaintiffs and Class Members have been damaged in the following ways:

a. invasion of privacy and disclosure of vehicle-movement patterns;

b. theft or unauthorized use of their Private Information;

c. lost or diminished value of their Private Information;

d. lost time and opportunity costs;

e. loss of the benefit of the bargain;

f. out-of-pocket costs;

g. increased risk of future harm;

h. increased risk of stalking, harassment, and physical harm; and

i. continued and certainly impending risk of additional fraud and misuse.

119. Plaintiffs and Class Members are entitled to compensatory and consequential damages and injunctive relief as a result of TransCore's negligence per se.

**THIRD CLAIM FOR RELIEF**
**<u>Breach of Implied Contract</u>**
*(On Behalf of Plaintiffs and the Class)*

120. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs as if fully stated herein.

121. TransCore provided tolling back-office services, including the processing of toll transactions, account management, and payment processing, in connection with which Plaintiffs and Class Members provided their Private Information.

122. Plaintiffs and Class Members provided their Private Information to TransCore (through the tolling agencies it services) as part of an implied contractual relationship in which TransCore agreed to safeguard Private Information and to notify account holders in the event of a data breach.

123. Plaintiffs and Class Members entered into implied contracts with TransCore (or were third-party beneficiaries of contracts between tolling agencies and TransCore) pursuant to which TransCore agreed to safeguard and protect Private Information and to timely notify affected individuals in the event of a data breach.

124. Plaintiffs and Class Members would not have provided their Private Information to TransCore or the tolling systems TransCore services absent the implied contract to safeguard such information.

125. TransCore materially breached the implied contracts by:

a. failing to implement adequate data security measures to protect Private Information;

b. failing to detect the unauthorized access in a timely manner;

c. failing to provide timely notice of the Data Breach; and

d. failing to take adequate steps to mitigate the harm resulting from the Data Breach.

126. As a direct and proximate result of TransCore's breaches of the implied contracts, Plaintiffs and Class Members have been damaged.

127. Plaintiffs and Class Members have performed all conditions, covenants, and promises required of them in accordance with the terms and conditions of the implied contracts, or such conditions have been waived.

128. Implied in every contract, including the implied contracts at issue here, is a covenant of good faith and fair dealing. TransCore breached the covenant of good faith and fair dealing by:

a. failing to implement reasonable data security measures despite representing that it maintains dedicated controls and procedures;

b. failing to timely notify Plaintiffs and Class Members of the Data Breach despite representing that it maintains notification procedures; and

c. placing its own financial interests above the security of Plaintiffs' and Class Members' Private Information.

129. TransCore's subterfuge and evasion in failing to disclose the Data Breach violates the covenant of good faith and fair dealing by depriving Plaintiffs and Class Members of the benefits of the contract—namely, the secure handling of their Private Information and timely notice of security incidents.

130. TransCore failed to advise Plaintiffs and Class Members promptly that it had experienced the Data Breach, thereby preventing them from taking timely action to protect themselves from the consequences of the breach.

131. As a direct and proximate result of TransCore's breaches, Plaintiffs and Class Members have been injured and have suffered actual losses, including but not limited to time spent monitoring accounts, costs of credit monitoring services, diminished value of Private Information, and increased risk of future harm.

**FOURTH CLAIM FOR RELIEF**
**<u>Unjust Enrichment</u>**
*(In the Alternative, On Behalf of Plaintiffs and the Class)*

132. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs as if fully stated herein.

133. Plaintiffs and Class Members conferred benefits upon TransCore through the payment of tolls processed by TransCore and through the provision of their Private Information, which TransCore used to conduct its tolling back-office business.

134. TransCore benefitted from receiving and using Plaintiffs' and Class Members' Private Information for commercial purposes, including account management, transaction processing, and system operations.

135. TransCore knew or should have known that Private Information provided by Plaintiffs and Class Members was private and confidential and was provided with the expectation that TransCore would adequately safeguard it.

136. TransCore knew of the benefits conferred upon it by Plaintiffs and Class Members in providing their Private Information and paying tolls processed through TransCore's systems.

137. TransCore should not be permitted to retain the full value of the benefits conferred upon it by Plaintiffs and Class Members because TransCore failed to adequately protect their Private Information.

138. But for Plaintiffs' and Class Members' willingness to entrust their Private Information to TransCore and TransCore's commitment (express or implied) to protect it, Plaintiffs and Class Members would not have used the tolling services processed by TransCore.

139. TransCore's wrongful conduct—including its failure to implement reasonable data security measures and its failure to disclose the Data Breach—has resulted in TransCore's unjust enrichment at the expense of Plaintiffs and Class Members.

140. The benefits conferred upon TransCore by Plaintiffs and Class Members are directly traceable to TransCore's conduct and are quantifiable.

141. It would be inequitable and unjust for TransCore to retain the benefits it received from Plaintiffs and Class Members without paying the value thereof or otherwise making Plaintiffs and Class Members whole.

142. The benefits Plaintiffs and Class Members conferred on TransCore were not conferred officiously or gratuitously, but rather in connection with a commercial tolling relationship in which TransCore was obligated to protect Private Information.

143. TransCore is liable to Plaintiffs and Class Members for restitution and/or disgorgement of its unjust enrichment in an amount to be determined at trial.

144. TransCore should be required to disgorge the ill-gotten gains it received from Plaintiffs and Class Members as a result of its unjust enrichment.

**FIFTH CLAIM FOR RELIEF**
**Violations of the Tennessee Consumer Protection Act**
Tenn. Code Ann. §§ 47-18-101 *et seq.*
*(On Behalf of Plaintiffs and the Class)*

145. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs as if fully stated herein.

146. The Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.*, was created to protect consumers from fraudulent and deceptive business practices.

147. 140. Plaintiffs and Class Members are "persons" within the meaning of the TCPA.

148. TransCore's conduct has caused injury to Plaintiffs and Class Members, including: the risk of identity theft; wrongful disclosure of Private Information; deprivation of the value of their Private Information; and overpayment for services that were not adequately secured.

149. TransCore concealed and/or failed to disclose the Data Breach, thereby preventing Plaintiffs and Class Members from taking timely action to protect themselves from the consequences of the breach.

150. TransCore concealed its lack of sufficient data security measures, representing instead that it maintained "dedicated controls and procedures" while failing to implement adequate security safeguards.

151. TransCore's conduct constitutes unfair and/or deceptive acts or practices affecting trade or commerce in violation of Tenn. Code Ann. § 47-18-104(a). TransCore's deceptive conduct emanated from its headquarters in Nashville, Tennessee, and was directed at consumers throughout the United States.

152. TransCore's failure to disclose the Data Breach and its inadequate security practices constitute fraudulent, deceptive, and/or unfair conduct within the meaning of the TCPA.

153. TransCore's misrepresentations and omissions had the capacity to deceive consumers and were material to consumers' decisions to entrust their Private Information to TransCore and the tolling systems it services.

154. TransCore had a duty to disclose the Data Breach and its inadequate security practices because:

a. TransCore had exclusive and/or superior knowledge of material facts not known or reasonably accessible to Plaintiffs and Class Members;

b. TransCore actively concealed the Data Breach and its security deficiencies; and

c. TransCore intended that Plaintiffs and Class Members would rely on its representations regarding data security.

155. Plaintiffs and Class Members justifiably relied on TransCore's representations regarding data security and its implied commitment to protect their Private Information.

156. TransCore's unfair and deceptive conduct proximately caused ascertainable loss to Plaintiffs and Class Members.

157. As a result of TransCore's violations of the TCPA, Plaintiffs and Class Members are entitled to actual damages, statutory and/or exemplary damages, treble damages, punitive damages, reasonable attorneys' fees and costs, and equitable relief, including injunctive relief, pursuant to Tenn. Code Ann. §§ 47-18-109, 47-18-110.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against TransCore and award the following relief:

a. An order certifying the Class as defined herein, appointing Plaintiffs as Class Representatives, and appointing their counsel as Class Counsel;

b. An order enjoining TransCore from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Private Information, and from refusing to issue timely, complete, and accurate notice regarding the Data Breach;

c. An order compelling TransCore to utilize appropriate cybersecurity methods and policies with respect to consumer data collection, storage, and protection, and to disclose with specificity the nature and extent of Private Information compromised;

d. An award of damages, including compensatory, consequential, statutory, exemplary, treble, and/or punitive damages, as applicable, in an amount to be determined at trial;

e. An award of reasonable attorneys' fees, costs, and litigation expenses;

f. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law; and

g. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

Dated: July 2, 2026

Respectfully submitted,


*/s/ Russell W. Lewis, IV*
Russell W. Lewis, IV (TN BPR # 24570)
**JOHNSON LAW GROUP**
1019 16th Ave. S.
Nashville, TN 37212
(615) 200-1122
Fax: (866) 902-8647
rlewis@johnsonlawgroup.com
*Lic. in AZ, CA, FL, GA, IL, IN, KY, MN, NC, OH, PA, TN only

**BAILEY & GLASSER LLP**

Bart D. Cohen (pro hac vice forthcoming)
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

Panida A. Anderson (pro hac vice forthcoming)
Maryland Bar No. 2112200010
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
(202) 499-1476
panderson@baileyglasser.com

*Attorneys for Plaintiffs and the Proposed Class*